**Chris HYNES, Plaintiff–Appellant,**

**v.**

**J. SQUILLACE, Hearing Officer; N. Buth, Correction Officer; and Louis F. Mann, Superintendent, Defendants–Appellees.**

**No. 1477, Docket 97–2091.**

United States Court of Appeals, Second Circuit.

Argued April 14, 1998.

Decided May 1, 1998.

Kenneth R. Stephens, Poughkeepsie, NY (Lauren Petit, law student intern, Prisoners' Legal Services of New York, on brief), for Plaintiff–Appellant.

Martin A. Hotvet, Assistant Attorney General, Albany, NY (Dennis Vacco, Attorney General of the State of New York, Peter H. Schiff, Deputy Solicitor General, Nancy A. Spiegel, Assistant Attorney General, on brief), for Defendants–Appellees.

Before: FEINBERG, JACOBS and MAGILL*, Circuit Judges.

PER CURIAM:

Plaintiff–Appellant Chris Hynes, an inmate at Shawangunk Correctional Facility, filed suit alleging that a corrections officer violated Hynes' First Amendment rights by charging him with misbehavior in retaliation for his prior inmate complaints, and that the prison hearing officer who ruled on the misbehavior report violated Hynes' due process rights under the Fourteenth Amendment. After referring the case to a Magistrate Judge and receiving the Magistrate Judge's Report–Recommendation, the United States District Court for the Northern District of New York (Scullin, *J.*) granted defendants' motion for summary judgment, denied plaintiff's motion for summary judgment, and dismissed the complaint.

Hynes appeals on the grounds that in granting summary judgment on the retaliation claim the district court erroneously relied on evidence submitted to the district court for the first time with the defendants' objections to the Report–Recommendation of the Magistrate Judge, that in any event questions of fact remain on the retaliation claim, and that the district court made insufficient findings to support its ruling (under *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995)) that Hynes' 21–day pre-hearing keeplock confinement did not deprive Hynes of a liberty interest.

## BACKGROUND

Hynes alleges that on November 5 and November 9, 1994, he filed grievances with defendant Louis Mann, Shawangunk's super-

---

* Honorable Frank J. Magill, of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

intendent, complaining about abusive conduct by defendant N. Buth, a correctional officer. He claims that on the evening of November 25, 1994, he asked Buth whether he had called the package room to check on the availability of a package that Hynes' family had dropped off earlier that day. According to Hynes, Buth responded, "No, handle it, write another complaint." The specific details of what followed are disputed; but it is uncontested that Hynes disobeyed Buth's direct order to lock into his cell.

The next day, Hynes was served with a misbehavior report, filed by Buth, charging him with violations of: (i) Rule 102.10, which provides that "[i]nmates shall not, under any circumstances, make any threat, spoken, in writing, or by gesture"; (ii) Rule 106.10, which provides that "[a]ll orders of facility personnel will be obeyed promptly and without argument"; (iii) Rule 107.11, which provides that "[i]nmates shall not verbally or in writing harass employees. This includes using insolent, abusive and/or obscene language and gestures"; and (iv) Rule 104.13, which provides that "[i]nmates shall not engage in conduct which disturbs the order of any part of the facility. This includes, but is not limited to, loud talking in mess halls, program areas or corridors."

Hynes spent 21 days in keeplock confinement pending the completion of his Tier III disciplinary hearing.[1] On December 15, 1994, he was found guilty of all of the charged rule violations and sentenced to 180 days in SHU. On January 27, 1995, Mann reversed the 180-day sentence after discovering that part of the tape recording of the disciplinary hearing was inaudible.

Hynes sued Mann, Buth, and J. Squillace, the hearing officer, pursuant to 42 U.S.C. § 1983, claiming: (i) that Buth filed the misbehavior report in retaliation for Hynes' complaints to Mann, in violation of the First Amendment; and (ii) that Hynes was denied due process, both prior to and at his disciplinary hearing, in violation of the Fourteenth Amendment.[2] The parties both moved for summary judgment. Magistrate Judge Scanlon recommended dismissal of Hynes' Fourteenth Amendment claim, finding that Hynes had not been deprived of a liberty interest under *Sandin v. Conner,* 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), but recommended that summary judgment be denied on the First Amendment retaliation claim because defendants had failed to submit evidence demonstrating that the misbehavior report was legitimate.

Defendants then filed an objection to the Magistrate Judge's Report–Recommendation, claiming that they were entitled to summary judgment on the retaliation claim because the evidence demonstrated Hynes' guilt of the violations charged in the misbehavior report. In support of their objection, defendants submitted supplemental evidence, including a partial transcript of the Tier III disciplinary hearing.

Hynes also filed an objection to the Report–Recommendation, claiming that: (i) *he* was entitled to summary judgment on the retaliation claim, and (ii) the Magistrate Judge erred in the *Sandin* analysis. Hynes also submitted a separate letter objecting to the defendants' submission of supplemental evidence in support of their motion for summary judgment on the retaliation claim.

The district court granted defendants' motion for summary judgment on all claims. On appeal, Hynes claims that the district court erred: (i) in dismissing his retaliation claim, both because the supplemental evidence should not have been considered, and because even considering this evidence, disputed issues of fact remain; and (ii) in failing to explain adequately the factual findings underlying its conclusion that plaintiff had

---

**1.** New York conducts three types of disciplinary hearings for its inmates. Tier I hearings address the least serious infractions and have as their maximum punishment loss of privileges such as recreation. Tier II hearings address more serious infractions and may result in 30 days of confinement in a Special Housing Unit ("SHU"). Tier III hearings concern the most serious violations and may result in unlimited SHU confinement (up to the length of the sentence) and recommended loss of "good time" credits.

**2.** In his objections to the Magistrate Judge's Report-Recommendation, and on appeal, Hynes asserts deprivation of a liberty interest only with regard to his 21-day pre-hearing keeplock confinement.

not been deprived of a liberty interest under *Sandin.*

## DISCUSSION

### I

*Reliance on Supplemental Evidence.* Considerations of efficiency and fairness militate in favor of a full evidentiary submission for the Magistrate Judge's consideration, and we have upheld the exercise of the district court's discretion in refusing to allow supplementation of the record upon the district court's *de novo* review. *See, e.g., Paddington Partners v. Bouchard,* 34 F.3d 1132, 1137–38 (2d Cir.1994) (finding no abuse of discretion in district court's refusal to consider supplemental evidence); *Pan American World Airways, Inc. v. International Bhd. of Teamsters,* 894 F.2d 36, 40 n. 3 (2d Cir.1990) (holding that district court did not abuse its discretion in denying plaintiff's request to present additional testimony where plaintiff "offered no justification for not offering the testimony at the hearing before the magistrate"); *see also Wallace v. Tilley,* 41 F.3d 296, 302 (7th Cir.1994) ("It is not in the interests of justice to allow a party to wait until the Report and Recommendation or Order has been issued and then submit evidence that the party had in its possession but chose not to submit. Doing so would allow parties to undertake trial runs of their motion, adding to the record in bits and pieces depending upon the rulings or recommendation they received.") (internal quotation marks and citations omitted).

■ At the same time, the district court had discretion to consider evidence that had not been submitted to the Magistrate Judge. Under 28 U.S.C. § 636(b)(1), the Magistrate Judge's Report–Recommendation was subject to *de novo* review as to those issues upon which the parties raised objections. Both § 636(b)(1) and Fed.R.Civ.P. 72(b) explicitly permit the district court to receive additional evidence as part of its review. *See* 28 U.S.C. § 636(b)(1) (1994) ("[T]he [district] judge may also receive further evidence...."); Fed.R.Civ.P. 72(b) ("The district judge to whom the case is assigned shall make a de novo determination upon the record, or after

additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made ...."); *see also* 12 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* § 3070.2, at 378 (1997) ("The statute and the rule both confirm, further, that the district judge is completely free to supplement the record developed by the magistrate judge with further evidence ....").

■ We do not think that the district court here abused its discretion in considering the defendants' supplemental evidence. The defendants plausibly asserted that they originally construed all of plaintiff's causes of action to be governed by *Sandin,* and therefore did not address the separate merits of the retaliation claim before the Magistrate Judge. The district court had discretion to accept this explanation, and it did.

■ Notwithstanding the district court's discretion to consider this supplemental evidence, the parties agree that the court erred in failing to give Hynes notice of its intention to consider this supplemental evidence in resolving the objections to the Magistrate Judge's Report–Recommendation. However, Hynes was not prejudiced by the district court's failure to give such notice. Hynes had moved for summary judgment on the retaliation claim before the Magistrate Judge; he therefore had every incentive to submit all evidence supporting his retaliation claim. After the Magistrate Judge recommended denial of the motions for summary judgment on the retaliation claim, Hynes objected, claiming that the Magistrate Judge should have recommended granting his motion. At that time, he also had the right to submit a response to defendants' objections to the Report–Recommendation, and chose to limit his response to technical objections relating to the supplementation of the record. *See* Fed.R.Civ.P. 72(b) ("A party may respond to another party's objections within 10 days after being served with a copy thereof."). Thus, Hynes had opportunities and incentives to submit evidence supporting his retaliation claim. Finally, Hynes has not pointed to any other evidence that he might have offered to counter defendants' supple-

mental evidence. Accordingly, we cannot find that the district court's failure to give Hynes notice of its intention to rely on the supplemental evidence prejudiced Hynes, and any procedural error was harmless. *Cf. Coach Leatherware Co. v. AnnTaylor, Inc.,* 933 F.2d 162, 167 (2d Cir.1991) (holding that district court's *sua sponte* decision to grant summary judgment against moving party without permitting party the opportunity to respond was proper where court's *"sua sponte* determination is based on issues identical to those raised by the moving party" and there is no "indication that the moving party might otherwise bring forward evidence that would affect the court's summary judgment determination").

■ *Issues of Fact.* Hynes argues next that even if the district court properly considered defendants' supplemental evidence, disputed issues of fact remained that precluded summary judgment on the retaliation claim. In order to sustain a retaliation claim, the plaintiff must demonstrate that he engaged in constitutionally protected conduct and that the "protected conduct was a substantial or motivating factor in the prison officials' decision to discipline the plaintiff." *Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996). Once the plaintiff carries his initial burden, "the defendants must show by a preponderance of the evidence that they would have disciplined the plaintiff 'even in the absence of the protected conduct.'" *Id.* (quoting *Mt. Healthy City School Dist. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977)).

We have established a "presumption that a prison official's acts to maintain order are done for a proper purpose." *Rivera v. Senkowski,* 62 F.3d 80, 86 (2d Cir.1995). "[T]he conclusion that the state action would have been taken in the absence of improper motives is readily drawn in the context of prison administration where we have been cautioned to recognize that prison officials have broad administrative and discretionary authority over the institutions they manage." *Lowrance v. Achtyl,* 20 F.3d 529, 535 (2d Cir. 1994) (internal quotation marks and citations omitted). In *Lowrance,* for example, we concluded that defendants had met their burden

of showing that they would have disciplined the plaintiff even in the absence of the protected conduct because "it was undisputed that [the inmate plaintiff] had in fact committed the prohibited conduct" for which he had been cited in a misbehavior report. *Id.* Thus, even assuming retaliatory motive, the defendants would be entitled to summary judgment "if there were proper, non-retaliatory reasons for [Hynes'] punishment." *Graham,* 89 F.3d at 81.

■ Here, the most serious charge in the misbehavior report was that Hynes refused to obey a direct order. Arguably as serious is the making of a threat (although here the force of any threat would have been abated if Hynes had complied with the order to allow himself to be locked in his cell). As to the refusal to obey a direct order, Hynes conceded that charge at his disciplinary hearing (and in his brief). *See* Appellant's Brief at 18; Appendix at 188. Later in the hearing, Hynes also admitted that he was loud and boisterous and had made some threats: "You know, I admit, you know, I was loud and boisterous, running around with my fist clenched and making threats and all that stuff like it says in the report, but I was upset about the thing with the package—" These admissions were corroborated by Buth's and Sergeant Kobelt's testimony at the hearing, and by the hearing officer's decision, which found Hynes guilty on all charges and which was reversed only because of a recording error. This evidence demonstrates that Hynes in fact committed the most serious, if not all, of the prohibited conduct charged in the misbehavior report, and thus the defendants met their burden of demonstrating proper, non-retaliatory reasons for filing the misbehavior report. Accordingly, the district court properly granted summary judgment to defendants on the retaliation claim.

## II

Hynes claims that the district court (i) did not sufficiently articulate the factual predicates for its finding that Hynes' 21-day prehearing keeplock confinement did not deprive him of a liberty interest under *Sandin v. Conner,* 515 U.S. 472, 115 S.Ct. 2293, 132

L.Ed.2d 418 (1995), and (ii) erroneously denied him discovery on the *Sandin* issue. We disagree.

To state a Section 1983 claim, a plaintiff must demonstrate that he possessed a protected liberty or property interest, and that he was deprived of that interest without due process. *See Green v. Bauvi,* 46 F.3d 189, 194 (2d Cir.1995). In *Sandin,* the Court held that liberty interests "will be generally limited to freedom from restraint which ... imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." 515 U.S. at 484, 115 S.Ct. at 2300. Following *Sandin,* we held that for a liberty interest to be protectable, the plaintiff "must establish both that the confinement or restraint creates an 'atypical and significant hardship' under *Sandin,* and that the state has granted its inmates, by regulation or by statute, a protected liberty interest in remaining free from that confinement or restraint." *Frazier v. Coughlin,* 81 F.3d 313, 317 (2d Cir.1996).

■ Citing *Brooks v. DiFasi,* 112 F.3d 46, 49 (2d Cir.1997) and *Miller v. Selsky,* 111 F.3d 7, 9 (2d Cir.1997), Hynes argues that the district court failed to identify with sufficient specificity the factual predicates underlying its conclusion that Hynes was not deprived of a liberty interest. In *Brooks,* we found the district court's *Sandin* analysis defective because it had failed to reflect in this analysis the lengthiness of the confinement, and the conditions of the confinement as compared to other forms of segregated confinement and to the general population of inmates. *Brooks,* 112 F.3d at 48–49. We instructed the district court on remand to "identify with specificity the facts upon which its [liberty interest] conclusion is based." *Id.* at 49; *see also Wright v. Coughlin,* 132 F.3d 133, 137 (2d Cir.1998) ("On remand, the district court must make specific findings supporting its conclusion as to whether Wright's 288 day disciplinary confinement implicates a liberty interest protected by due process."); *Miller,* 111 F.3d at 9 ("If the district court reaffirms the grant of the motion on the ground that Miller's confinement did not impose an 'atypical or significant hardship' ...,

the ruling should identify specific facts that support this conclusion.").

*Miller, Brooks* and *Wright* all involved relatively long periods of SHU confinement, and specific articulation of the factual findings underlying the district court's liberty interest analysis was necessary. However, in cases involving shorter periods of segregated confinement where the plaintiff has not alleged any unusual conditions, the district court need not provide such detailed explanation of its reasoning. For example, in *Arce v. Walker,* 139 F.3d 329 (2d Cir.1998), we considered *Brooks* and *Miller* and held that the district court had adequately specified its findings by stating that the confinement at issue in *Sandin* was 30 days, and that the "combined effects of [the plaintiff's 18] day segregation plus exercise deprivation and verbal harassment" did not distinguish the plaintiff's circumstances from *Sandin. Id.* at 336 (quoting *Arce v. Walker,* 907 F.Supp. 658, 662 n. 3 (W.D.N.Y.1995)).

Here, Hynes offered no evidence in support of his argument that his 21–day keeplock confinement was atypical or significant, notwithstanding his familiarity with the conditions of his own confinement, while the defendants submitted detailed evidence on the typicality of Hynes' confinement. Noting that "[p]laintiff has not presented any evidence demonstrating that his pre-hearing confinement in keeplock for twenty-one (21) days extended his sentence in an unexpected manner, or was atypical in any way," the district court concluded that Hynes had not been deprived of a liberty interest. Moreover, the district court adopted the Magistrate Judge's Report–Recommendation, which contained a finding that the conditions of Hynes' keeplock confinement mirrored the conditions of other segregated inmates. Given plaintiff's failure of proof, including his failure to allege any unusual conditions, the short span of the confinement at issue, and previous decisions (including *Sandin* ) holding that comparable periods and conditions of segregation do not amount to a deprivation of a liberty interest, we think the district court sufficiently articulated the factual predicates

underlying its liberty interest analysis.[3]

Finally, Hynes claims that the district court failed to afford him an opportunity to conduct discovery on the typicality of his keeplock confinement. However, Hynes did not request discovery relating to the *Sandin* inquiry and failed even to submit an affidavit setting forth his personal knowledge regarding the atypicality of his 21–day keeplock confinement. The district court correctly granted summary judgment to defendants on the Fourteenth Amendment due process claim.

## CONCLUSION

The judgment of the district court is affirmed.

---

3. Hynes does not specifically challenge the merits of the district court's conclusion that he was not deprived of a liberty interest under *Sandin*.