AMBRO, Circuit Judge,
concurring
Imagine a guard tells an inmate accused of misconduct that he never would have *427 been charged if he had not filed a complaint against prison officials. The inmate admits to the misconduct but argues that the retaliatory enforcement is nonetheless unlawful. Can the guard, having conceded that the outcome would have been different without the complaint, still take advantage of something we call the “same decision” defense? If we are to give any meaning to the name of the defense, the answer must be “no.”
However, some panels of our Court have come out differently in non-precedential opinions, leading to confusion in the district courts about the state of our law. Those outcomes, though incorrect in my view, draw support from decisions in some of our sister circuits. Thus, in addition to joining Chief Judge McKee’s excellent opinion, which fully resolves our case, I write separately to discuss the application of the same decision defense in future lawsuits.
In our Court, the confusion starts with our decision in Carter v. McGrady, 292 F.3d 152 (3d Cir. 2002). That case involved a prisoner who was disciplined for “egregious violations of prison policy,” including receiving a stolen typewriter and sending unauthorized letters. Id. at 154. He argued that the reason for the disciplinary charges was.that prison officials resented him for working as a jailhouse lawyer. However, there was overwhelming evidence of his guilt and nothing concrete to suggest that he was being charged only because he helped other inmates with their legal matters. We therefore concluded that, even if he could establish a ‘prima facie First Amendment retaliation case, the same decision defense applied. We wrote:
Given the quantum of evidence of Carter’s misconduct, we cannot say that the prison officials’ decision to discipline Carter for his violations of prison policy was not within the broad discretion that we must afford them. Even if prison officials were motivated by animus to jailhouse lawyers, Carter’s offenses, such as receiving stolen property, were so clear and overt that we cannot say that the disciplinary action taken against Carter was retaliatory.
Id. at 159 (internal quotation marks and citation omitted).
This passage raised two questions. First, what “quantum” of evidence is required to trigger Carterl And in cases where that “quantum” has been reached, can the same decision defense nonetheless fail? Until today’s decision we had never addressed either question in a precedential opinion. However, a series of non-precedential opinions from panels of our Court suggested that the answer to the first question is merely “some evidence” and that the answer to the second is “no.” See, e.g., Bullock v. Buck, 611 Fed.Appx. 744, 748 (3d Cir. 2015); Dockery v. Beard, 509 Fed.Appx. 107, 111 (3d Cir. 2013). Under Internal Operating Procedure 5.7, these non-precedential opinions do not speak for the full Court or constitute binding precedent. However, our district courts have applied these answers in more than 80 cases, and the time has come for us to clarify.
So from where, if not Carter, do these answers come? As it turns out, our district courts and our non-precedential opinions have borrowed them from the Eighth Circuit. In Orebaugh v. Caspari, 910 F.2d 526 (8th Cir. 1990), that Court held that, “[w]hile a prisoner can state a claim of retaliation by alleging that disciplinary actions were based upon false allegations, no claim can be stated when the alleged retaliation arose from discipline imparted for acts that a prisoner was not entitled to perform.” Id. at 528. It reasoned that a contrary holding “would allow a prisoner to openly flout prison rules after filing a grievance and then bring a claim under section 1983'arguing that prison officials disciplined him in retaliation for his filing a *428 grievance.” Id. Thus, it gave a “no” answer to our second question — whether a prisoner can ever succeed in a retaliation lawsuit when there is sufficient evidence that he was disciplined for misconduct he actually committed. As for the first question' — the amount of proof required — the Court implied that the standard is “some evidence” supporting the misconduct charge. Id.
Next, in Henderson v. Baird, 29 F.3d 464 (8th Cir. 1994), the Court expressly adopted the “some evidence” standard. Specifically, it held that a “finding [of misconduct that] was based on some evidence of the violation ... essentially checkmates [a] retaliation claim.” Id. at 469. Lest anyone draw too much encouragement from the word “essentially,” the Court later restated its test without that qualifier. See Hartsfield v. Nichols, 511 F.3d 826, 829 (8th Cir. 2008) (“[C]laims of retaliation fail if the alleged retaliatory conduct violations were issued for the actual violation of a prison rule. Thus, a defendant may successfully defend a retaliatory discipline claim by showing some evidence the inmate actually committed a rule violation.”) (emphasis added) (internal quotation marks and citation omitted).
Our district courts and our non-prece-dential opinions have treated these Eighth Circuit cases as a way to give meaning to Carter’s standards. This is a problem for two reasons. First, Carter never said that “some evidence” is a sufficient “quantum” or that it is impossible for a prisoner to succeed in a retaliation case when there is enough evidence of misconduct. And second, I believe that the Eighth Circuit’s cases were wrongly decided and that, even if that were not so, our precedent prevents us from importing them into our law.
Judge Heaney’s partial dissent in Ore-baugh persuasively explains the problems with the Eighth Circuit’s reasoning. He wrote that “no court has heretofore articulated ... a rule” that “the legitimate reasons the prison officials have advanced”— i.e., that the prisoner actually engaged in misconduct — “are dispositive of [a] retaliation claim.” 910 F.2d at 529-30 (Heaney, J., concurring in part and dissenting in part). He said that a prisoner instead “deserves the opportunity to try to show that the reasons given for disciplining him were a pretext for the prison officials’ retaliatory animus.” Id. He concluded by observing:
In its zeal to stem the tide of prisoner litigation and in a misguided attempt to discourage the open flouting of prison rules, the majority ... denies Orebaugh ... equal access to the adversarial process ... and deprives this court of the opportunity to review Orebaugh’s retaliation claim on an adequately developed record. In so doing, the majority immunizes from review any trivial disciplinary charge that prison officials can support with some evidence, allowing such officials to inhibit prisoners’ constitutional right of access to grievance procedures with impunity.
Id. at 530.
The Fifth Circuit has agreed with Judge Heaney. It noted that the Eighth Circuit’s approach might make sense for malicious prosecution claims, which require plaintiffs to show that the charges against them were legally “groundless.” Woods v. Smith, 60 F.3d 1161, 1164-65 (5th Cir. 1995). A “retaliation claim, on the other hand, focuses on ... interference, asking only whether there has been an obstruction of the exercise of a constitutional right.” Id. at 1165. It therefore held that an “action motivated by retaliation for the exercise of a constitutionally protected right is actionable, even if the act, when taken for a different reason, might have been legitimate.” Id. Any other ruling “would unfairly tempt corrections officers to enrobe themselves and their colleagues in what would be an absolute shield against retaliation claims.” Id.
*429 Meanwhile, other than concerns over an onslaught of lawsuits, the Eighth Circuit has given very little justification for its approach. The closest we get is a citation in Henderson to the Supreme Court’s decision in Superintendent v. Hill, 472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985). That decision does use the term “some evidence,” but in a different context. The Supreme Court addressed a claim that officials violated a prisoner’s Fifth Amendment due process rights by arbitrarily taking away his good time credits, which would have lowered his sentence based on good behavior. The Court ruled that the Constitution requires, at a minimum, that prison disciplinary decisions be supported by “some evidence” before officials can interfere with an inmate’s protected liberty interests. Id. at 447,105 S.Ct. 2768.
Nothing in Hill requires, or even suggests, its use in First Amendment retaliation cases, and the Eighth Circuit has not explained why it has applied that standard. Hill says that a disciplinary proceeding will not be constitutionally infirm if there is “some evidence.” But officials cannot cleanse a First Amendment violation merely by complying with the Fifth Amendment. Due process requires that a prisoner have a fair opportunity to show that he did not commit the misconduct. The First Amendment provides that, even if he did commit it, he has a right to be free from enforcement that would not have occurred if he had not filed a complaint. See, e.g., Graham v. Henderson, 89 F.3d 75, 80 (2d Cir. 1996) (“The issue in Hill was merely whether there was, and whether there needed to be, some evidence to support a prison disciplinary decision. The issue here is whether the disciplinary decision was improperly motivated.”).
There is another reason not to apply the Eighth Circuit’s test in our cases. In that Circuit a plaintiff has the burden to disprove the same decision defense. See Goff v. Burton, 7 F.3d 734, 737 (8th Cir. 1993). The Eighth Circuit has acknowledged that, in the employment retaliation context, the Supreme Court has put the burden of establishing the defense on the defendant. See id. at 737-38 (citing Mount Healthy Bd. of Ed. v. Doyle, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)). However, it has declined to use the Mount Healthy test in prisoner retaliation cases. Id.
By contrast, we have rejected Goff and, pér Mount Healthy, placed the burden in prisoner retaliation cases on the defendant to establish the same decision defense. See Rauser v. Horn, 241 F.3d 330, 333 & n.2 (3d Cir. 2001) (adopting Mount Healthy and disagreeing with Goff). Our use of Mount Healthy is significant. That is because, as Chief Judge McKee notes in our panel’s majority opinion, we already have held that the same decision defense from Mount Healthy does not automatically bar liability when a plaintiff is charged, based on retaliatory motivations, for misconduct that he actually committed.
For instance, in Hill v. City of Scranton, 411 F.3d 118 (3d Cir. 2005), police officers were fired for violating an ordinance. It was clear that they did not comply with the ordinance, but they argued that the City would not have enforced it had they not engaged in constitutionally protected activity. We held that under Mounty Healthy the officers did not need to show “compliance with the ordinance to prevail on their First Amendment claim” because “[djiscriminatory enforcement of a statute or ordinance is not justified simply because the enforcement is otherwise valid.” Id. at 130. The same should be true here.[1]
*430 Today’s decision takes an important step toward clarifying that Carter does not incorporate the Eighth Circuit’s approach. In particular, there is undoubtedly “some evidence” that Joseph Watson’s prison radio was contraband. But we correctly hold that this is' not the type of “clear and overt” misconduct that satisfies Carter's “quantum of evidence” standard. See Carter, 292 F.3d at 159.
Indeed, this case provides an example of why Judge Heaney and the Fifth Circuit in my view are correct. Watson’s radio was normal in all respects but one — it had a small piece of tape securing the antenna. Prison regulation's define contraband to include “any item altered from its original state.” See Department of Corrections Policy, DC-ADM 815, Section 3.C.I. Under this definition, ethereal in the kindest sense, Watson’s taped-up radio counted. And, as Chief Judge McKee notes, punishment for contraband violations can include up to 90 days in restrictive confinement. If officials were allowed to hunt for every minor instance of misconduct in an effort to punish inmates for their speech, the First Amendment would ring hollow inside a prison’s walls.
Though Chief Judge McKee’s opinion provides needed guidance on the first question left open by Carter (the “quantum” of evidence that is needed), it has no occasion to reach the second (whether the same decision defense can ever fail if there is a sufficient “quantum”). For this second question to arise, the evidence of misconduct would need to be greater (a sufficient “quantum” under Carter) than it was here, and the proof that the official would not have taken the same action in the absence of constitutionally protected activity would need to be stronger. Take, for instance, the hypothetical at the beginning of this concurring opinion, where the guard admits that there would have been no charge without the complaint. What then?
This is an important question, and I hope that in future cases we will be able to provide a clear answer. As discussed, in Carter we held that, “[e]ven if prison officials were motivated by animus to jailhouse lawyers,” the offenses “were so clear and overt that we cannot say that the disciplinary action taken against Carter was retaliatory.” 292 F.3d at 159. But I do not read this to mean that all “clear and overt” violations will lead to the same result. In that case, there was no direct evidence that the officials were motivated solely by a desire to retaliate. Rather, the best scenario for the inmate was that the officials had mixed motivations — some legitimate and others not. This is the situation in which the same decision defense is supposed to apply. However, in cases where there is direct evidence that retaliation drove a charging decision, the defense does not shield a defendant from liability. *431 The defense’s very name belies its applicability.
To discourage overreading this concurrence, I note that I have no doubt that an official who disciplines an inmate for a “clear and overt” violation should enjoy a strong presumption that the same decision defense applies. As the Eighth Circuit has recognized, it would produce chaos if prisoners could survive summary judgment on retaliation claims in response to every routine disciplinary action. Such an outcome would be inconsistent with the Supreme Court’s instruction that, in “the volatile prison environment, it is essential that ... officials be given broad discretion to prevent ... disorder.” Thornburgh v. Abbott, 490 U.S. 401, 413, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989). Thus, though a “legitimate prison disciplinary report” is not an “absolute bar to a retaliation claim,” it is “probative and potent summary judgment evidence.” Woods, 60 F.3d at 1166. But the Eighth Circuit has overcorrected for the problem. There is no reason to disregard normal First Amendment standards by closing the door entirely. The power to prevent disorder is not a license to retaliate. With the right evidence, the presumption should be rebuttable.
* ❖ * * * *
In sum, today’s majority opinion clarifies that not every violation of prison protocols supported by some evidence will bar a First Amendment retaliation claim. That is particularly so with relatively minor offenses, such as a radio antenna secured by tape. The standards for more serious violations will need to be decided in future cases.

. The Eleventh Circuit has adopted the Eighth Circuit's approach. See O'Bryant v. Finch, 637 F.3d 1207, 1215 (11th Cir. 2011). Thus, my criticisms of the latter’s test apply with equal *430 force to the former’s. Meanwhile, the Second Circuit has reached a similar result, albeit by different reasoning. See Gayle v. Gonyea, 313 F.3d 677, 682 (2d Cir. 2002) ("The burden then shifts to the defendant to show that the plaintiff would have received the same punishment even absent the retaliatory motivation. The defendant can meet this burden by demonstrating that there is no dispute that the plaintiff 'committed the most serious, if not all, of the prohibited conduct charged in the misbehavior report.' ") (internal citation omitted) (quoting Hynes v. Squillace, 143 F.3d 653, 657 (2d Cir. 1998)). Hynes, in turn, relies on a "presumption that a prison official’s acts to maintain order are done for a proper purpose.” 143 F.3d at 657 (internal quotation marks omitted). The problem is that the Court never explains why this presumption cannot be rebutted. Surely there are circumstances where evidence can show that an official was not acting for a proper purpose. But this test closes the door to such proof. I note, however, that the Second Circuit's approach, though one I disagree with, at least requires that there be "no dispute” as opposed to merely "some evidence.”