ALD-073                                                          NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-3317
_____

TIMOTHY DOCKERY,
Appellant

v.

JEFFREY A. BEARD, Secretary of Corrections; SUPERINTENDENT RAYMOND J.
SOBINA; SUPERINTENDENT BRIAN V. COLEMAN; CHRISTINE KENNEDY,
Grievance Coordinator; RHONDA HOUSE, Grievance Coordinator; KERRI CROSS,
Hearing Examiner; F. NUNEZ, Hearing Examiner; CAPTAIN LEGGET; CAPTAIN T.
RISKUS; LIEUTENANT LESURE; LIEUTENANT VOJACEK; SERGEANT BERTO;
SERGEANT BITTNER; JOHNSON, Correctional Officer; GRIFFIN, Correctional
Officer; COLLINS, Correctional Officer; DOBIS, Correctional Officer; RICKET,
Correctional Officer; JENNINGS, Correctional Officer; ANKRON, Correctional Officer;
VOJACEK, Correctional Officer; OFFICER JOHN DOE; R. TRETINIK, Corrections
Health Care Administrator; CHRIS MYERS, Physician Assistant; NURSE TONY;
JENNIFER WILLIAMS, Mailroom Staff; CAPTAIN DAVID W. NEAL, Commanding
Officer of the Pennsylvania State Police, individually and in their official capacity;
D.P. BURNS, former Deputy Superintendent; POPOVICH, Unit Manager; BUSH,
Sergeant
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 2:09-cv-00732)
District Judge:  Honorable Terrence F. McVerry
_____

Submitted for Possible Dismissal Pursuant to 28 U.S.C. § 1915(e)(2)(B)
or Summary Action Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6
December 20, 2012

OPINION
_____

PER CURIAM.

Timothy Dockery, an inmate currently incarcerated at SCI Frackville in Frackville, Pennsylvania, appeals from an order of the United States District Court for the Western District of Pennsylvania granting Appellees' motion for summary judgment and denying his motions for summary judgment for his civil rights complaint pursuant to 42 U.S.C. § 1983. Because this appeal does not present a substantial question, we will summarily affirm. <u>See</u> 3d Cir. L.A.R 27.4; I.O.P. 10.6.

**I.**

Because we primarily write for the parties, we need only recite the facts necessary for our discussion. In his complaint, Dockery alleges that he was charged with two fabricated misconducts after his sister lodged a complaint about corrections officers being intoxicated at work. Two weeks later, Dockery was subjected to a cell search. After the search, he refused to re-enter his cell and relinquish the handcuffs. He subsequently received sixty additional days in disciplinary custody for threatening an employee and refusing to obey an order.

On September 11, 2007, Dockery found a misconduct form containing a threat against Muslims on the floor of his cell. After an investigation, staff concluded that

Dockery likely obtained a blank misconduct form to attempt to discredit staff or obtain a transfer. Dockery was not charged with any disciplinary infractions.

On November 20, 2007, Dockery was transferred to SCI Fayette and was placed in administrative custody until his complete records were received to determine his housing needs. A subsequent determination was made to keep him in administrative custody for a possible Special Management Unit ("SMU") referral. Dockery was later informed that he would be recommended for placement on the Restricted Release List ("RRL").

On September 16, 2008, Dockery received a misconduct report for assaulting Officer Ankron with a food tray and was placed on a "behavior modified diet" of food loaf for five days. Approximately two months later, Dockery was subjected to a cell search. After the search, he refused to relinquish the handcuffs, and officers used a tether attached to the cuffs to pull his hands through the door slot to prevent him from using the cuffs as a weapon. Dockery suffered abrasions to his wrist, and a nurse instructed him to wash his wrist with soap and water. Furthermore, on November 8, 2008, Dockery received notice that he was being referred for placement in the Secure Special Needs Unit ("SSNU").

On December 30, 2008, Dockery called Lieutenant Vojacek to his cell to report a leaking toilet. Vojacek instructed him not to flush the toilet while he turned off the water supply. Dockery disregarded this instruction and exposed Vojacek's face to human waste, requiring him to seek medical treatment. Dockery was found guilty of refusing to obey an order, received ninety days in disciplinary custody, and was assessed the costs of

Vojacek's medical treatment. Later, on March 4, 2009, medical staff examined Dockery in his cell because of his participation in a hunger strike. Pursuant to policy, Dockery's inmate account was debited $10 for this treatment. Dockery's inmate account was also debited $8.87 to cover costs incurred with replacing his broken typewriter.

Dockery filed his complaint on June 8, 2009 and filed an amended complaint on August 19, 2009. On September 24, 2010, the District Court granted in part and denied in part Appellees' motions to dismiss. On September 27, 2011, the District Court granted defendant Myers' motion for summary judgment and dismissed Dockery's claims against Williams and Lieutenant Vojacek. Dockery filed motions for summary judgment on January 11, 2012 and April 27, 2012, and the remaining defendants filed a motion for summary judgment on February 1, 2012. On May 22, 2012, a Magistrate Judge recommended that Dockery's motions be denied and the defendants' motion be granted. On July 12, 2012, the District Court adopted the recommendation, granted the defendants' motion for summary judgment, denied Dockery's motions, and entered judgment in favor of Defendants. Dockery then timely filed his notice of appeal.

**II.**

We have jurisdiction pursuant to 28 U.S.C. § 1291 and exercise plenary review over the District Court's order granting summary judgment. See Giles v. Kearney, 571 F.3d 318, 322 (3d Cir. 2009). Summary judgment is appropriate only when the record "shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "The moving party has

4

the burden of demonstrating that there is no genuine issue as to any material fact, and summary judgment is to be entered if the evidence is such that a reasonable fact finder could find only for the moving party." Watson v. Eastman Kodak Co., 235 F.3d 851, 854 (3d Cir. 2000) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). We may summarily affirm if the appeal does not present a substantial question, and may do so on any basis supported by the record. Murray v. Bledsoe, 650 F.3d 246, 247 (3d Cir. 2011) (per curiam).

## III.

Section 1983 provides private citizens with a means to redress violations of federal law committed by state officials. See 42 U.S.C. § 1983. To establish a claim under § 1983, a plaintiff "must establish that she was deprived of a federal constitutional or statutory right by a state actor." Kach v. Hose, 589 F.3d 626, 646 (3d Cir. 2009).

Dockery first alleges that he suffered several instances of retaliation by prison staff. To sustain a retaliation claim, an inmate must demonstrate that (1) he engaged in constitutionally protected conduct; (2) he suffered adverse action; and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse response. See Carter v. McGrady, 292 F.3d 152, 157-58 (3d Cir. 2002); see also Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). If the prisoner makes a prima facie showing that his constitutionally protected conduct was a motivating factor in the decision to discipline, the defendant then has the burden of showing that the same disciplinary action

5

would have been taken even in the absence of the protected activity.  See Rauser, 241 F.3d at 334.

The District Court properly granted summary judgment to Appellees for Dockery's retaliation claims.  First, the record establishes that he did not suffer any adverse action because no disciplinary action was taken with regard to the two allegedly forged misconduct reports.  Second, evidence concerning Dockery's guilt of the various disciplinary offenses shows that Appellees' action was reasonably related to a legitimate penological interest and that Dockery would have been charged regardless of any protected activity he was engaged in.  See Rauser, 241 F.3d at 334; see also Carter, 292 F.3d at 159 (affirming summary judgment in favor of defendants on retaliation claim when "the quantum of evidence" concerning the prisoner's misconduct showed that he would face disciplinary action regardless of his protected activity); Henderson v. Baird, 29 F.3d 464, 469 (8th Cir. 1994) (stating that a finding of "some evidence" in support of a disciplinary determination "checkmates" a retaliation claim).

Third, there is no evidence connecting Dockery's placement in both administrative custody and the SSNU to any particular protected activity.  Furthermore, Dockery conceded in his grievance regarding his housing placement that he could not say anything to justify his "problematic" past.  Finally, nothing connects the cell search, confiscation of property, and failure to return Dockery's in-cell property to any particular protected activity.  Furthermore, the search of Dockery's cell was motivated by a legitimate

6

penological interest to determine whether he was in possession of blank misconduct report forms because of Dockery's prior grievances alleging the receipt of forged reports.

Dockery also raises two Eighth Amendment claims alleging the use of excessive force during two separate incidents. To review these claims, we must determine whether the "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 7 (1992). Factors to consider are: (1) the need for force, (2) the relationship between that need and the amount of force used, (3) the extent of the injury, (4) the extent of the threat to safety "as reasonably perceived by responsible officials," and (5) "any efforts made to temper the severity of a forceful response." Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000) (quoting Whitley v. Albers, 475 U.S. 312, 321 (1986). Whether the force was excessive depends on the "extent of the force" and the surrounding circumstances, not upon the "resulting injuries." Smith v. Mensinger, 293 F.3d 641, 648 (3d Cir. 2002).

As an initial matter, the record contains no evidence that officers used any type of force to restrain Dockery when he struck Officer Ankron in the leg with a food tray. His second claim stems from an incident during which he suffered slight abrasions to his wrist after officers pulled the tether attached to Dockery's handcuffs to access the cuffs for removal when Dockery refused to have the cuffs removed. This evidence indicates that officers applied minimal force in a "good-faith effort to maintain or restore discipline," Hudson, 503 U.S. at 7; accordingly, the District Court properly granted summary judgment to Appellees for Dockery's second excessive force claim.

7

Similarly, the District Court properly granted summary judgment to Appellees on Dockery's Eighth Amendment claim of deliberate indifference against Officer Jennings. "Only 'unnecessary and wanton infliction of pain' or 'deliberate indifference to the serious medical needs' of prisoners are sufficiently egregious to rise to the level of a constitutional violation." White v. Napoleon, 897 F.2d 103, 108-09 (3d Cir. 1990) (quoting Estelle v. Gamble, 429 U.S. 97, 103 (1976). However, absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004); see also Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993). The record establishes that Officer Jennings was present when a nurse examined Dockery's wrist and instructed him to wash his wrist with soap and water. Accordingly, there is no evidence that Officer Jennings deliberately interfered with Dockery's receipt of necessary medical treatment.

Dockery also alleges that his Eighth Amendment rights were violated because of the conditions of confinement he encountered in the special housing units at both SCI Forest and SCI Fayette. The relevant Eighth Amendment inquiry is whether the alleged deprivation is "sufficiently serious" and whether the inmate has been deprived of the "minimal civilized measure of life's necessities." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (citing Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). An inmate must demonstrate that "he is incarcerated under conditions posing a substantial risk of serious

8

harm" and that prison officials demonstrated "deliberate indifference" to his health or safety. Id. However, only "extreme deprivations" are sufficient to present a claim for unconstitutional conditions of confinement. Hudson, 503 U.S. at 8-9. "Relevant considerations include the length of confinement, the amount of time prisoners must spend in their cells each day, sanitation, lighting, bedding, ventilation, noise, education and rehabilitation programs, opportunities for activities outside the cells, and the repair and functioning of basic physical activities such as plumbing, ventilation and showers." Nami v. Fauver, 82 F.3d 63, 67 (3d Cir. 1996) (citing Tillery v. Owens, 907 F.2d 418, 427 (3d Cir. 1990).

We agree that Appellees were entitled to summary judgment for these claims. As an initial matter, we have previously held that the conditions in restrictive housing units in Pennsylvania prisons do not violate the Eighth Amendment. See Griffin v. Vaughn, 112 F.3d 703, 709 (3d Cir. 1997) (holding that the restrictive conditions in administrative custody in Pennsylvania state correctional institutions, in and of themselves, do not violate the Eighth Amendment). Nothing in the record indicates that officers, acting with deliberate indifference, exposed Dockery to noise levels and the throwing of human waste and other objects. Furthermore, the District Court properly determined that Dockery's complaints regarding behavior modified diets, showers, and exercise did not rise to the level necessary to form the basis of Eighth Amendment violations. See, e.g., LeMaire v. Maass, 12 F.3d 1444, 1456 (9th Cir. 1993) ("Because a temporary Nutraloaf diet does not deny 'the minimal civilized measure of life's necessities,' its use falls short

9

of the threshold deprivation necessary to form the basis of an Eighth Amendment violation."); Wishon v. Gammon, 879 F.2d 446, 449 (8th Cir. 1992) (forty-five minutes of exercise per week not unconstitutional); Knight v. Armontrout, 878 F.2d 1093, 1096 (8th Cir. 1989) (denial of outdoor recreation for thirteen days did not violate the Eighth Amendment); Davenport v. DeRobertis, 844 F.2d 1310, 1316 (7th Cir. 1988) (limiting inmates to one shower a week does not violate the Eighth Amendment). Accordingly, the District Court properly granted summary judgment to Appellees on Dockery's claims regarding his conditions of confinement.

Lastly, Dockery alleges that his procedural due process rights were violated through his placement in special housing units, the confiscation of his property, and various assessments on his inmate account. Procedural due process protection "for a state created liberty interest . . . is limited to those situations where deprivation of that interest 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" Griffin, 112 F.3d at 706 (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995). No liberty interest is implicated where the state action does not "present a dramatic departure from the basic conditions of confinement." Sandin, 515 U.S. at 484. We must consider the duration of the disciplinary confinement and the conditions of that confinement in relation to other prison conditions. Id.

Assuming that Dockery has a protected liberty interest because of the length of time he spent in special housing units, the record establishes that his placement was periodically reviewed by prison staff, and such a procedure complies with due process.

10

See Shoats v. Horn, 213 F.3d 140, 147 (3d Cir. 2000) (in Pennsylvania, periodic review of inmates indefinitely confined to administrative confinement meets due process requirements). Furthermore, the record establishes that Dockery's assignment to special housing was based in part upon his past behavior. "[D]ue process is not violated by placing an inmate in administrative custody based on past conduct that furnishes a basis for predicting that the inmate will engage in future acts of violence if corrective measures are not taken." Fraise v. Terhune, 283 F.3d 506, 523 (3d Cir. 2002). Accordingly, the District Court properly granted summary judgment to Appellees for this claim.

Dockery also alleges that he was deprived of his in-cell property upon his return to SCI Fayette. Although Dockery's property was not returned to him through the grievance process, Appellees were entitled to summary judgment on his deprivation of property claim because he has an adequate post-deprivation remedy in state tort law. See Daniels v. Williams, 474 U.S. 327, 328 (1986) (negligent acts of officials causing unintentional losses of property do not implicate due process); Hudson v. Palmer, 468 U.S. 517, 533 (1984) (intentional deprivations of property do not violate due process if a meaningful post-deprivation remedy for the loss is available); see also 42 Pa. Cons. Stat. Ann. § 8522(a), (b)(3) (common law action for conversion); Tillman v. Lebanon Cnty. Corr. Facility, 221 F.3d 410, 422 (3d Cir. 2000).

"Inmates have a property interest in funds held in prison accounts," Reynolds v. Wagner, 128 F.3d 166, 179 (3d Cir. 1997), and so they are "entitled to due process with respect to any deprivation of this money," id. We agree that Dockery received adequate

due process for the deductions for the typewriter and medical co-pay taken out of his account because he took advantage of an adequate post-deprivation remedy—the grievance process—to challenge these assessments. Furthermore, with regards to the medical co-pay, "this is not a situation in which [Dockery is] deprived of the benefits of [his] property and receiving nothing in return; rather in exchange for the fees, [he] receive[s] the benefit of health care, the value of which undoubtedly exceeds the modest fee assessed." Id. at 180 (alterations in original). Finally, the record establishes that Dockery was afforded a pre-deprivation disciplinary hearing prior to his account being assessed for Lieutenant Vojecek's medical bills following Dockery's use of human waste to assault him. See Burns v. Pa. Dept' of Corr., 642 F.3d 163, 171-72 (3d Cir. 2011) (an inmate is entitled to pre-deprivation notice and a hearing before his account is charged for medical expenses incurred as the result of a finding of guilt for assault). Accordingly, the District Court properly granted summary judgment to Appellees for these claims.

**IV.**

For the foregoing reasons, no substantial question is presented and we will affirm the judgment of the District Court. See 3d Cir. L.A.R 27.4; I.O.P. 10.6.